Chicago City Railway Co. v. Hennessy.

---

## Chicago City Railway Co.
### v.
### Patrick Hennessy, Adm'r, etc.

16   153
55   227

16   153
68   224
69   60

16   153
70   95

1. CONTRACTOR.—One who contracts to do a specific piece of work, furnishing his own assistants, and executing the work either entirely in accordance with his own ideas, or in accordance with a plan previously given to him by the person for whom the work is done, without being subject to the orders of the latter in respect to the details of the work, is clearly a contractor and not a servant.

2. CONTRACT TO BUILD CABLE SYSTEM—NON-LIABILITY OF COMPANY. —Where a company contracted with A to build a designated cable system, with certain specified materials to be furnished by the latter, and the question of how or where A should procure the materials was a matter with which the company had no concern, and A, for his own convenience and benefit, used a certain machine on the street to make the concrete with, and B, a child, while playing around the machine, was injured, and an action for damages was brought against the company. *Held*, that the company is not liable.

. APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding. Opinion filed March 3, 1885.

Messrs. HYNES, ENGLISH & DUNNE, for appellant; as to non-liability of employer where work is given to contractor, cited Kepperly v. Ramsden, 83 Ill. 354; Hale v. Johnson, 80 Ill. 185; Scammon v. Chicago, 25 Ill. 424; West v. St. L., V. & T. H. R. R. Co., 63 Ill. 545; Pfau v. Williamson, 63 Ill. 16; Prairie State L. & T. Co. v. Doig, 70 Ill. 52; DeForrest v. Wright, 2 Mich. 268; McGuire v. Grant, 25 N. J. 356; Butler v. Hunter, H. & N. 826; 31 L. J. Exch. 214.

The same rule applies in case of corporations: Nevins v. Peoria, 41 Ill. 502; Joliet v. Seward, 86 Ill. 402; City of Chicago v. Robbins, 2 Black, 428.

Messrs. CLIFFORD, ANTHONY & PAULSEN, for appellee.

WILSON, P. J. This was an action on the case under the statute, brought by Patrick Hennessy, as administrator of James Hennessy, deceased, against the Chicago City Railway Company, to recover damages for the benefit of the next of kin, for injuries to the deceased, resulting in his death. The errors mainly relied upon for reversal are, first, improperly giving and refusing instructions as to the exercise of care on the part of the deceased and his father, and second, that the liability, if any exists, is not that of the railway company, but of one Holmes, the contractor, for building the road.

So much of the facts as needs to be stated to present the questions of law involved, substantially as follows: The

Chicago City Railway Co. v. Hennessy.

railway company entered into a written contract with C. B. Holmes for the construction, by the latter, of an endless cable railway on State and other streets in the city of Chicago, commonly known as the "grip car" railway. By the terms of the contract Holmes was to furnish all material and complete the road for the sum of $1,500,000. While engaged in the prosecution of the work the deceased, a boy about eight years old, and another boy, were playing around an apparatus called a "conveyor," which consisted of a long trough in which was a revolving screw driven by steam, and so constructed as to push forward, when in motion, sand or other material placed therein, to a point where it was dumped into a concrete mixer. The deceased got onto the top of the conveyor and when the engine started he was drawn into the machine and killed.

In the view we take of the case, it is not necessary to consider the questions arising on the instructions relating to the duty of the deceased, or his father, in respect to the observance of care, and we proceed directly to inquire whether the defendant company or Holmes is liable for the injury, if a liability is shown.

It is claimed by the defendant that inasmuch as the entire work of building the road was let by the company to Holmes, a competent and independent contractor, free from all control or supervision on the part of the railway company, that the workmen were in the employ of Holmes in his individual capacity, and in no way subject to the control of the company; that it was work from which, if properly done, no injurious consequences could arise, and that it was not a nuisance *per se* but a lawful public improvement; the railway company is not liable for the negligent use by the contractor of implements or machinery selected and used by him, and not provided for nor required by the contract. The court below refused to give various instructions asked for by the defendant, embodying substantially the law as thus claimed by the defendant. The 9th was as follows:

"The jury are instructed that if they believe, from the evidence, that the defendant company let the contract for the construction of the cable system, for running its cars on State

street, to C. B. Holmes, retaining no control over the manner in which he should prosecute the work, the machinery he should employ, or the workmen he should employ, and that the said Holmes was using the machine in question for the purpose of mixing or manufacturing some of its materials for the prosecution of said work, under said contract, and that the deceased in this case came to his death through the negligent use of said machine by the workmen of said contract, or while engaged about the manufacture of said materials, then the defendant in this case can not be held liable, and your verdict should be not guilty."

The principle deducible from the authorities in this and other States seems to be that when an entire work, including materials, is committed, without any right of supervision, interference or control, to a competent and independent contractor, the party authorizing the work is exempt from liability for injury resulting from the negligence or wrongful act of the contractor, which the person letting the work had no reason to anticipate. In such case the contractor is not to be deemed the servant or agent of the party authorizing the work, so as to render the latter liable for the negligence of the former. A reference to a few cases will be sufficient to illustrate this doctrine.

In Scammon v. City of Chicago, 25 Ill. 424, where the owner of premises had employed a contractor to erect buildings thereon, including sidewalks and an area around them, (the owner giving no order or directions to the contractor or his workmen as to the manner of doing the work) it was held by the Supreme Court reversing the judgment below, that the owner was not liable for an injury occurring to a stranger through the negligence of the contractor in leaving the premises without sufficient protection.

In Pfau v. Williamson, 63 Ill. 16, the same doctrine is announced, it being held that where the owner of a lot in a city contracts with a reliable and competent builder for the erection of a house thereon, including a cellar under a sidewalk in the street, and surrenders possession of the property to the builder for the purpose of the work, and the work is

not done under the direction of the owner, and an injury ensues to a third person from the negligence of the contractor and not of the owner, such contractor is not the servant of the owner, and is alone liable for the injury inflicted.

So in Hale et al. v. Johnson, 80 Ill. 185, Hale and Moss contracted with Rowe to excavate for the foundations of a building which the latter was about to erect, for which they were to be paid a stipulated price when the work was finished. They had the exclusive supervision and control of the work, and employed and paid all the laborers. The plaintiff was hired by them as a day laborer about the work and was injured through the carelessness of the contractors. He brought suit against the contractors and Rowe, the owner of the premises, and recovered against all of them. The Supreme Court reversed the judgment as to Rowe, saying that "while a master is responsible for injuries arising from the negligence of his servant, it is the doctrine that a party who has contracted for the doing of certain work for his use and benefit, is not liable for injuries arising in the performance of such work," citing Scammon v. City of Chicago, *supra;* 2d Hilliard on Torts, 537; Wharton on Neg., Sec. 181, and other authorities.

A similar case is Kepperly v. Ramsden, 83 Ill. 354, where the plaintiff sued to recover damages sustained by her in consequence of falling into an excavation in the sidewalk, made for the purpose of constructing coal vaults for the adjoining building. The suit was against the owner of the premises and the contractors. The court held that it was the duty of the contractors, who had exclusive control of the work, to provide sufficient safeguards around the excavation, and that the owner of the premises was not responsible for their failure or neglect of duty. They say, "We can add nothing on this branch of the law to what we have said in our former decisions, and for a fuller expression of our views, we make reference to a few of them," citing Scammon v. Chicago, 25 Ill. 425; Pfau v. Williamson, 63 Ill. 20.

In West v. St. Louis, V. & T. H. R. R. Co., 63 Ill. 545, the defendant railroad company contracted with the firm of Mc-

Keen, Smith & Co., to build its road and appurtenances. The firm hired the plaintiff to work upon a freight house. He was injured by inhaling the exhalations from a poisonous mixture applied to the timber to prevent decay, and he brought suit against the railroad company to recover damages for the injury. The defense was, that the liability, if any, was upon the contractors and not the railroad company. The defense prevailed in the trial court, and was affirmed by the Supreme Court. The plaintiffs, in support of their claim of liability against the railroad company, cited Lesher v. Wab. Nav. Co., 14 Ill. 85; Ohio & M. R. R. Co. v. Dunbar, 20 Ib. 623; Chi., St. P. and Fond du Lac R. R. Co. v. McCarthy, Ib. 385; Ill. C. R. R. Co. v. Finnigan, 21 Ib. 646; Same v. Kanouse, 39 Ib. 272; T. P. & W. R. R. Co. v. Rumbold, 40 Ib. 143; Chi. & R. I. R. R. Co. v. Whipple, 22 Ib. 105. But the court held that those cases were distinguishable from the case then before the court, and Chief Justice Lawrence, who delivered the opinion, said, by way of illustrating the distinction: " But where a railroad company contracts with A to dig and wall a well upon its right of way, and agrees to pay. him five hundred dollars when the work is completed, and A hires B to assist him in the work, and in its performance B is injured through the carelessness of A, as for example, by his knowingly using decayed and worthless tackle for raising earth from the well, surely it would not be contended that B could bring an action against the company for the injuries received. The reason, of course, is because A in hiring B was exercising his own private right as an individual, for his own benefit, and was not acting as the servant or agent of the company. The company had not authorized him to employ B, and the latter, in accepting employment from A, could only look to him to furnish the proper machinery or pay the proper wages." To the same effect is Nevins v. City of Peoria, 41 Ill. 502.

A like doctrine obtains in other States, and in the English courts. Thus, in Hilliard v. Richardson, 3 Gray, 349, where the owner of land employed a carpenter, under a written agreement and for a specified price, to alter and repair a building

thereon, and to furnish all materials therefor, and an injury happened to a third person from boards deposited in the highway in front of the building, by a teamster in the employ of the carpenter, and intended to be used in making the repairs, the law on this subject is discussed at great length in the opinion of the court, and the conclusion reached that the owner was not liable, he not standing in the relation of master to the contractor, and not having given any directions for depositing the boards in the highway. See, also, to the same effect, Hundhausen v. Bond, 36 Wis. 29; Storrs v. Utica, 17 N. Y. 104; Pack v. Mayor, 8 N. Y. 222; Blake v. Ferris, 1 Selden, 48; Palmer v. Lincoln, 5 Neb. 137; Smith v. Simmons, a recent case decided by the Supreme Court of Pennsylvania, and found in 16 L. Reporter, p. 282.

In the well considered English case, Reedie v. London and N. W. Ry. Co., found in the 4th Exch. R. 1849, pp. 244–254, the railway company contracted with certain persons to build a portion of its line, and by the contract reserved to itself the power of dismissing any of the contractors' workmen for incompetence.

The workmen in constructing a bridge over a public highway, negligently caused the death of a person passing beneath along the highway, by allowing a stone to fall upon him. It was held in an action against the company, that it was not liable, notwithstanding the reservation by the company of the right to dismiss incompetent workmen. The case was discussed very fully and a large number of cases reviewed. Among other things, the court said: "If the defendants had employed a contractor to repair their engines or carriages, and the contractor's workmen had negligently caused a heavy piece of iron to fall on a bystander, it would appear a strange doctrine to hold that the defendants were liable."

Wharton states the doctrine thus: "One who contracts to do a specific piece of work, furnishing his own assistants, and executing the work either entirely in accordance with his own ideas, or in accordance with a plan previously given to him by the person for whom the work is done, without being sub-

ject to the orders of the latter in respect to the details of the work, is clearly a contractor and not a servant."

In the case at bar, the accident arose from the prosecution of work by the contractor purely collateral to the construction of the road. The company contracted with Holmes to build a designated cable system, with certain specified materials to be furnished by him, among which were engines, wire, concrete, etc. How or where the contractor should procure such materials, was a matter with which the company had no concern. The contract did not provide how or where the concrete should be procured or mixed, much less that it should be mixed in a machine like the one which caused the injury; nor was Holmes the agent of the company in procuring and using the machine. The making of the concrete upon the street and the use of the machine, was the idea and device of Holmes for his own convenience and benefit. The company could not interfere or control as to where he should procure or manufacture his materials, and he might manufacture them in the public street if the municipal authorities did not object. The use of the machine was not one of the natural contingencies which the company were required to anticipate, nor which it could have provided against. Its use was only subsidiary to the performance, by the contractor, of his undertaking.

We are of the opinion that, under the facts shown, the railway company is not liable, and that the court erred in not giving the defendant's 9th instruction and the other instructions involving the same proposition of law. The judgment is reversed and the cause remanded.

Reversed and remanded.